OPINION OF THE COURT
Michael A. Fiechter, J.
DECISION UPON MOTION
Defendant’s motion challenges the constitutionality of CPL 530.12 and 530.13, arguing that the failure of these statutes to provide for an adversarial evidentiary hearing — at defendant’s request — before a temporary order of protection is issued or continued deprives defendant and others similarly situated of due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and article I, § 6 of the New York Constitution.
This court finds that CPL 530.12 and 530.13 are constitutional as written and violate neither Constitution. Defendant has offered nothing to show that CPL 530.13 as applied to him is unconstitutional. He argues rather that the statute itself and by implication, CPL 530.12, are unconstitutional on their face, citing People v Forman (145 Misc 2d 115 [Crim Ct, NY County 1989]), People v Faieta (109 Misc 2d 841 [Nassau County Dist Ct 1981]) and People v Derisi (110 Misc 2d 718 [Suffolk County Dist Ct 1981]).
FACTS
When defendant was arraigned in this court on August 25, 1998, on a single count of aggravated harassment in the second degree, two separate nonfamily offense orders of protection were issued pursuant to CPL 530.13. Both were full stay-away orders protecting four named individuals. The matter was marked for conference and adjourned for two days, at which time the defendant requested a hearing to test the legality of the orders. When the matter was adjourned to this court, the People withdrew their prior consent and objected to holding the hearing, arguing that defendant did not have a right to an evidentiary hearing solely at his request. The matter was thereupon adjourned for submission of memoranda of law.
*185 STANDING
Before a determination can be made that a statute violates the Due Process Clause, the moving party must establish standing: does there exist a sufficient “life, liberty or property” interest affected by the statute or government action which would trigger due process protection? (See generally, Daniels v Williams, 474 US 327 [1986]; Davidson v Cannon, 474 US 344 [1986].) Orders of protection impact upon the right to use and enjoy a domicile and can impact upon relations with persons neither witnesses nor victims of the crimes alleged. Both CPL sections can impact on a license to carry, possess, repair or sell firearms, potentially having a significant impact on a defendant’s legitimate professional or business pursuits.
The court finds that CPL 530.12 and 530.13 do sufficiently impact liberty or property interests so as to trigger due process protection and analysis. (Chrisley v Morin, 126 AD2d 977 [4th Dept 1987], appeal dismissed 69 NY2d 1037; Suffolk Sanitary Corp. v Town Bd., 84 Misc 2d 373 [Sup Ct, Suffolk County 1975]; Matter of Brown v Murphy, 34 Misc 2d 151 [1962].)
While the orders of protection in this case were issued under CPL 530.13, cases cited by defendant were all decided under the provision for family offenses, CPL 530.12. The liberty and property interests, however, are identical for both CPL sections. Considering the similarity in the intent of the Legislature enacting the statutes, the constitutionality of both statutes is considered in this opinion.
WHICH PROCESS IS DUE?
In determining the applicability of the Due Process Clause, the United States Supreme Court first asks whether the asserted individual interests are encompassed within the Fourteenth Amendment’s protection of life, liberty or property. If protected interests are implicated, the Court then decides what procedures constitute due process of law: substantive or procedural. (Ingraham v Wright, 430 US 651 [1977].)
Under substantive due process analysis, courts will strictly scrutinize a statute or other government action and require a showing of compelling interests in its deliberate acts — whether legislative, executive or judicial — that purposely affect fundamental rights of individuals. (See generally, Bowers v Hardwick, 478 US 186 [1986].)
Even government actions that survive this scrutiny must still withstand procedural due process analysis. (Mathews v Eld *186 ridge, 424 US 319 [1976].) Here, if government action or statute impacts citizens as a function of the way that government is expected to act, then only the manner in which the government is exercising its lawful duty will be analyzed. To satisfy constitutional requirements, the statute or government action must have a real and substantial relation to the subject to be obtained and the methods to obtain that subject must not be unreasonable, arbitrary or capricious. (Nebbia v New York, 291 US 502 [1934].)
The legislative intent of the statutes in question must be determined in deciding which analysis is required. (United States v Salerno, 481 US 739 [1987].)
The statutory authorization for a local criminal court’s issuance of a family offense temporary order of protection pursuant to CPL 530.12 arose from Assembly Bill A 8842 of 1977, which became law on July 19 of that year (L 1977, ch 449). The bill amended the Domestic Relations Law by adding section 252, provided for the authority of the Supreme Court to issue temporary orders of protection in matrimonial proceedings and. extensively revised article 8 of the Family Court Act to provide for the issuance of temporary orders of protection in the Family Courts and criminal courts.
This came about because complaining witnesses in Family Courts were withdrawing complaints and giving up because they had to return to court “endlessly” to obtain relief from abusers. Domestic violence tends to escalate over time and a victim’s frustration with Family Court procedures was encouraging abusers. The temporary order of protection was necessary in all three courts so that the abused victim would not have to forego the protection by choice of forum. The bill gave the Family Courts and the criminal courts concurrent jurisdiction over any proceeding concerning acts which would constitute disorderly conduct, harassment, menacing, reckless endangerment, assault or attempted assault between spouses, parents and child or between members of the same family or household.
In 1981, the Legislature added CPL 530.13 (L 1981, ch 575, § 1) amending the Criminal Procedure Law to allow for orders of protection to be issued by local criminal courts to the victims of crimes other than those committed upon family members. The order would be issued upon good cause shown. In 1986, the Legislature amended CPL 530.13 (L 1986, ch 794, § 2) to add witnesses to the list of those who could seek the protection of a temporary order of protection. The memoranda in support *187 of this legislation indicate that the legislation was necessary in response to legislative findings that victim and witness intimidation by defendants released on bail or on their own recognizance was a significant problem for prosecutors.
The right of a local criminal court to issue temporary orders of protection was again revisited by the Legislature in 1994 with the passage of the Family Protection and Domestic Violence Intervention Act (L 1994, ch 222). According to its Committee reports, the purpose of the statute was to further “integrate] the purposes of the family and criminal laws to assure clear and certain standards of protection for New York’s families consistent with the interests of fairness and substantial justice.” (L 1994, ch 222, § 1, 1994 McKinney’s Session Laws of NY, at 786.) The Act provided that the victims of domestic violence no longer must choose between the Family Courts and criminal courts to seek redress and relief from their abusers. The Act was strongly supported in the Senate and Assembly and was passed in response to, among other things, research that indicated that one of the major problems contributing to the recurrence of domestic violence was the lack of aggressive enforcement by law enforcement officials. (Weinstein and Saland, Bill Authors Clarify Legislative Intent, NYLJ, Nov. 6, 1998, at 2, col 6.) The Act also amended the Family Court Act and Domestic Relations Law by allowing a local criminal court to issue a temporary order of protection on matters that would be returned to Family Court or Supreme Court when those courts were not in session. This Act also strengthened the temporary order of protection by providing for mandatory arrests for a violation thereof. In 1997, CPL 530.12 and 530.13 (L 1997, ch 589, §§ 1, 2) were again amended by the Legislature, this time to provide for the issuance of a temporary order of protection where the defendant charged in a criminal court had failed to appear and a bench warrant had to be issued for his arrest.
Here, generally, procedural due process analysis is all that is required. A statute enacted under the State’s police power whose effect — but not purpose — is to curtail the liberty of individuals to live their lives must bear a reasonable relationship, and some proportion to, the alleged public good which justifies the restriction of individual liberty. (Fenster v Leary, 20 NY2d 309 [1967].) Protection of the health and safety of the public is a paramount government interest which justifies summary administrative action. (Hodel v Virginia Surface Min. & Reclamation Assn., 452 US 264 [1981].)
*188 Even statutes that take away individuals’ rights to freedom and subject them to pretrial incarceration have been found to be regulatory and not penal in nature, requiring only a procedural, rather than substantive, due process analysis. (United States v Salerno, 481 US 739 [1987], supra.)
CPL 530.12 and 530.13 and their sister statutes governing temporary orders of protection in Supreme Court and Family Court involve no finding of wrongdoing and, as indicated above, are not meant to punish but rather to protect.
BURDEN OF PROOF AND SCOPE OF INQUIRY
Regardless of whether the court proceeds under a procedural or a substantive due process analysis, the party challenging the facial constitutionality of a State statute bears a heavy burden of proof. (Matter of Wood v Irving, 85 NY2d 238 [1995].) The challenger must establish the unconstitutionality of the statute beyond a reasonable doubt. (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a]; Matter of Schultz Mgt. v Board of Stds. & Appeals, 64 NY2d 1057 [1985].)
In determining the constitutionality of a local law, it must be presumed by the court of first instance that the legislative body had investigated and found the existence of a situation or situations showing or indicating the need or desirability of the law in question. A statute will only be struck down as unconstitutional as a last unavoidable resort. (Matter of Smith, 118 Misc 2d 165 [1983].)
Legislative enactments are imbued with a strong presumption of constitutionality and will not be held unconstitutional unless the party asserting such argument meets its heavy burden of proving the infirmity beyond a reasonable doubt. (People v Pagnotta, 25 NY2d 333 [1969]; People v Portnoy, 140 Misc 2d 945 [1988]; McKinney’s Cons Laws of NY, Book 2, Constitution, Constitutional Interpretation §§ 43, 46 [1982 ed].) It is well settled that a court of first impression should not ordinarily set aside a legislative enactment unless such conclusion is inescapable. (People v Portnoy, supra, at 947.)
A court, in interpreting a statute, should attempt to effectuate the attempt of the Legislature and is not free to legislate. (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98 [1997].) See also Pajak v Pajak (56 NY2d 394 [1982]), wherein the Court of Appeals held that the right to a divorce is statutorily created and since section 170 of the Domestic Relations Law did not provide for a defense to an action for divorce except upon the grounds of adultery, no defense could be offered to prevent *189 plaintiffs claims of a right to a divorce on the ground of cruel and inhuman treatment. “The failure of the Legislature to provide that mental illness is a valid defense in an action for divorce based upon the ground of cruel and inhuman treatment must be viewed as a matter of legislative design. Any other construction of the statute would amount to judicial legislation.” (Supra, at 397.)
THE PROCESS THAT IS DUE
The essence of due process is notice and a meaningful opportunity to be heard. A full evidentiary hearing is not automatically required to satisfy constitutional due process. (Mathews v Eldridge, 424 US 319 [1976], supra; Goss v Lopez, 419 US 565 [1975]; Parham v J. R., 442 US 584 [1979]; Lenihan v City of New York, 636 F Supp 998 [SD NY 1985].) A hearing is not required in every conceivable case of government impairment of a private interest. (Matter of Economico v Village of Pelham, 50 NY2d 120 [1980]; Matter of Knutsen v Bolas, 114 Misc 2d 130 [Sup Ct, Erie County 1982].)
It is also settled that the defendant does not have a statutory or constitutional right to confront his accuser prior to trial. (People v Hayday, 144 AD2d 207 [3d Dept 1988]; NY Const, art I, § 6; US Const 6th Amend.) Clearly the Legislature’s intent was not to punish the subject of the temporary order of protection, but rather to protect the victims of domestic violence and victims and witnesses of crimes and their families. The State has a legitimate and significant interest in doing so and the statutes in question are reasonably related to these lawful and proper objectives. Just as importantly, the procedures available to a defendant who is the subject of the temporary orders of protection issued pursuant to these statutes are more than adequate to protect against an erroneous temporary deprivation of a liberty or property interest.
The temporary order of protection is issued in coordination with the bail hearing held pursuant to CPL 530.10 wherein the defendant is present and represented by counsel. A defendant held on bail or remanded has a statutory right to review the legality of that bail and necessarily the issuance of the temporary order of protection which is a condition of that bail in a superior court pursuant to CPL 530.30. At such bail hearings, defendant has a right to present evidence and the court in its discretion can order an evidentiary hearing if one is required. (CPLR 2218; Korn v Korn, 56 AD2d 837.)
It is worthy of note that New York’s bail statutes here have already withstood constitutional attack. (Bellamy v Judges & *190 Justices in N. Y. City Criminal Ct., 41 AD2d 196 [1st Dept 1973], affd without opn 32 NY2d 886.) The order can be vacated or modified by way of motion or order to show cause, both of which include the court’s inherent right to order an eviden-tiary hearing if required. The statutes themselves provide flexibility to limit their impact upon those who are subject to the order.
The orders can be modified to allow for the defendant, with supervision, to return to the household to obtain personal or business belongings. The statutes provide for a modification to lessen the impact of the effect of the deprivation on familial relationships by allowing courts of competent jurisdiction to provide for visitation with children by one who is subject to a temporary order of protection issued in a local criminal court.
The temporary order of protection is automatically limited by the speedy trial limitations provided for in the underlying Penal Law charge. Specifically, for a felony, six months; for an A misdemeanor 90 days; for a B misdemeanor 60 days; and for a violation 30 days. (CPL 30.30 [1] [a], [b], [c], [d].)
PROCESS IN OTHER COURTS
As part of its determination that the statutes in question comply with due process mandates, this court has considered the procedures in other courts. Specifically, section 828 of the Family Court Act provides for the issuance of a temporary order of protection upon good cause shown. While the court should make a full inquiry, no evidentiary hearing is required for the asking. (Family Ct Act § 821 [1] [a]; §§ 822, 828; Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 828, at 231-32; Matter of Owre v Owre, 60 AD2d 604 [2d Dept 19.77].) Respondent in a family offense petition has no automatic right to subject the petitioner to an examination before trial. (Matter of Kunz v Kunz, 119 Misc 2d 80 [Fam Ct, Nassau County 1983, Diamond, J.].) Further, the Appellate Division has the discretionary right to review a temporary order of protection issued in Family Court. (Family Ct Act § 1112; Firestone v Firestone, 44 AD2d 671 [1st Dept 1974].)
The Supreme Court may issue a temporary order of protection pursuant to Domestic Relations Law § 252 in the adjudication of matrimonial actions. “Despite the absence of explicit language covering the standards to be employed in granting orders of protection and the terms of such orders, it would appear that the substantive law to be applied is that supplied by *191 Article 8 of the Family Court Act.” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 252, at 702.) The Appellate Division, Second Department, has determined that in order to issue a temporary order of protection, the Supreme Court does not automatically have to provide an evidentiary hearing. (Peters v Peters, 100 AD2d 900 [2d Dept 1984].) When the woman’s allegations of abuse are corroborated by affidavits, medical or documentary proof, the court does not need a hearing to grant an order of protection.
Victims of domestic violence should expect to be treated equally in the Supreme, Family or District Courts. Those who are the subject of the temporary order of protection should also expect equal protection of the laws in all three courts. The similarity in procedures afforded in these courts further supports the court’s finding of constitutionality of the statutes in question. Similarity in treatment of litigants in the different courts is also required in addressing the societal problem of domestic violence considering the concurrent jurisdiction of the courts. (CPL 530.12 [11], [12], [13]; Family Ct Act § 812; Domestic Relations Law §§ 240, 252.)
defendant’s legal argument
The three cases offered by defendant are unpersuasive. In People v Derisi (110 Misc 2d 718 [Suffolk Dist Ct 1981], supra), the court found, relying on CPL 510.20, that a continuance of a temporary order of protection issued pursuant to CPL 530.12 is not valid unless the defendant is given an opportunity to be heard, which is the equivalent of a hearing. As indicated above, a defendant’s right to be heard is not a right to an evidentiary hearing.
The defendant also offers People v Faieta (109 Misc 2d 841 [Nassau Dist Ct 1981], supra) which finds CPL 530.12 to be constitutional and denied that portion of defendant’s motion seeking a declaration that the statute was unconstitutional for not providing an evidentiary hearing upon request. The court in Faieta, however, did provide an evidentiary hearing after motion by way of order to show cause. The Faieta court found that because the defendant can challenge the continuance of the temporary order of protection by way of motion or order to show cause, and because both these procedures contained the “inherent judicial” right to order a hearing, the procedures available sufficiently protected the defendant’s right to due process. This court agrees.
*192 The case which is most often cited as a basis for the- right to an evidentiary hearing before a temporary order of protection can be continued, at least here in the District Court of Nassau County, is People v Forman (145 Misc 2d 115 [Crim Ct, NY County 1989]). Forman appears to find CPL 530.12 unconstitutional for its failure to provide a prompt evidentiary hearing. The case is not good law for a number of reasons. First, the court ignored the defendant’s burden of proof and the limitation on the court’s ability to strike a statute as unconstitutional. “There is a simple, but well-founded, presumption that an act of a Legislature is constitutional and that this presumption can be upset only by proof persuasive beyond a reasonable doubt.” (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370 [1978].) There is no indication in the Forman decision that this presumption of validity was given any effect or even recognized. (See generally, Hotel Dorset Co. v Trust for Cultural Resources, supra.)
Second, the Forman court also found that once a temporary order of protection is issued in a criminal court, “there is no opportunity to litigate a challenge to any one such order while it is still in effect.” (People v Forman, supra, at 121.) This assertion is patently false and particularly puzzling considering the Forman court acknowledges (at 122) that the temporary order of protection was reissued on each adjourned date, thereby giving defendant an opportunity to be heard in opposition each and every time the case was on the court’s calendar.
Third, Forman (supra) found that Derisi and Faieta (supra) “both specifically held that defendant had the right to a post-arraignment evidentiary hearing to contest the continuance of a previously issued [temporary order of protection].” (Supra, at 124.) The Forman court plainly misread Faieta. Without explaining the obvious contradiction, the Forman court recognizes that an individual charged with a misdemeanor can be incarcerated and held on bail from 60 to 90 days without an evidentiary hearing without violating his rights to due process. Yet the same court comes to the conclusion that keeping the defendant from his home for the same speedy trial time periods does violate due process.
Fourth, the Forman court makes no mention of the procedures followed in the Family Court or the Supreme Court for the issuance or continuance of temporary orders of protection.
Fifth, Forman, (supra) argues that CPL 510.20 provides for a defendant’s right to an evidentiary hearing upon his request to review the application for recognizance or bail. This is false. *193 CPL 510.20 provides for such hearing, if necessary, in the court’s discretion and the constitutionality of New York State’s bail statutes has already been established.
What is most disturbing about Forman was the emphasis the court placed on a defendant’s “special interest in his/her home as an enclave of personal security and privacy” (People v Forman, supra, at 126). What the Legislature has said over the past 21 years is that the defendant’s “enclave of personal security and privacy” is all too often a torture chamber for the victim of domestic violence.
Forman determined that “[b]eing suddenly deprived of one’s home, even temporarily, is a traumatic experience.” (Supra, at 126.) On the date of the incident that led to the issuing of the order of protection, defendant had punched his wife in the mouth, knocking out a tooth. A year earlier he had pushed her to the floor, breaking her ankle and then caused her to walk on her ankle while he threw books at her. After the order of protection was issued, he called her on the phone advising her that he was coming to see her with a gun.
The Forman decision (supra) substituted that court’s personal view of fairness for established law. It avoided constitutional analysis of the statute yet indirectly called the statute unconstitutional. The injustice of such decision-making to Mrs. Forman, and to society generally, is obvious.
Defendant’s motion for an evidentiary hearing to contest the continuance of the temporary order of protection based on the unconstitutionality of CPL 530.12 and 530.13 is denied. The statutes are constitutional as written.