## STATE OF CONNECTICUT *v.* JOHN DOE*

Superior Court       Judicial District of     File No. CR990085967
Stamford-Norwalk at Norwalk

Memorandum filed April 10, 2000

*Richard J. Colangelo, Jr.*, assistant state's attorney, for the state.

*Tierney, Zullo, Flaherty & Murphy*, for the defendant.

## I

## INTRODUCTION

RODRIGUEZ, J. The defendant, John Doe, challenges the constitutionality of the laws and procedures used in Connecticut courts which provide for issuing protective orders that result in barring a person from their home as a result of an arrest for a family violence crime.

The defendant was issued a summons by officers from the local police department for disorderly conduct, a violation of General Statutes § 53a-182, while

---

* On April 25, 2000, the disorderly conduct charge was nolled by the state; this memorandum of decision has been thus titled in accordance with the spirit and intent of General Statutes § 54-142a.

he was at the residence he shares with his wife. The defendant later appeared before the court at which time the state requested the court to issue a protective order for the benefit of the defendant's wife. The defendant requested a continuance in order to procure counsel. The court referred the defendant to a family violence response and intervention officer (officer) for the preparation of the initial report pursuant to General Statutes § 46b-38c. According to the defendant's brief, the victim's advocate advised the officer that a protective order would issue. The officer spoke with the defendant in person and with the wife by telephone. The officer compiled a report indicating the wife's allegations and the defendant's denial of the charges. The officer supplied the court with the report, and the court issued a protective order pursuant to § 46b-38c.[1] The court

---

[1] General Statutes § 46b-38c provides in pertinent part: "(a) There shall be family response and intervention units in the Connecticut judicial system to respond to cases involving family violence. The units shall be coordinated and governed by formal agreement between the Chief State's Attorney and the Judicial Department. . . .

"(c) Each such local family violence intervention unit shall: (1) Accept referrals of family violence cases from a judge or prosecutor, (2) prepare written or oral reports on each case for the court by the next court date to be presented at any time during the court session on that date, (3) provide or arrange for services to victims and offenders . . . . All information provided to a family relations officer in a local family violence intervention unit shall be for the sole purpose of preparation of the report for each case and recommendation of services and shall otherwise be confidential and retained in the files of such unit, and not be subject to subpoena or other court process for use in any other proceeding or for any other purpose.

"(d) In all cases of family violence, a written or oral report and recommendation of the local intervention unit shall be available to a judge at the first court date appearance to be presented at any time during the court session on that date. A judge of the Superior Court may consider and impose the following conditions to protect the parties, including but not limited to: (1) Issuance of a protective order pursuant to subsection (e) . . . .

"(e) A protective order issued under this section may include provisions necessary to protect the victim from threats, harassment, injury or intimidation by the defendant, including but not limited to, an order enjoining the defendant from (1) imposing any restraint upon the person or liberty of the victim; (2) threatening, harassing, assaulting, molesting or sexually

ordered that the defendant refrain from imposing any restraint upon the person or liberty of his wife, from threatening, harassing, assaulting, molesting, or sexually assaulting his wife, and from entering the family dwelling occupied by his wife.

Subsequently, a hearing was conducted before this court at which the defendant was represented by counsel. The officer testified along with other witnesses. The court modified the order by permitting the defendant to return to his residence, but continued the remaining provisions of the previous restraining order.

The defendant claims that the statutes and procedures used for the issuance of the protective order are unconstitutional because they have denied the rights secured to him under article first, §§ 7, 8, 9 and 10, of the state constitution and the fifth and fourteenth amendments to the United States constitution. The defendant asks the court to dismiss the information against him pursuant to General Statutes § 54-56 and Practice Book § 41-8 (8) and (9) and to dismiss the protective order.

The defendant alleges that his constitutional rights to substantive and procedural due process and equal protection have been violated. The defendant also claims that his rights pursuant to § 46b-38c have been violated. The court will address the constitutional claims first.

The review of the defendant's constitutional claims is guided by the well established principle that a "presumption of constitutionality . . . attaches to a statutory enactment and the burden . . . rests upon a party asserting its invalidity to establish not only that it is unconstitutional beyond a reasonable doubt but that

---

assaulting the victim; or (3) entering the family dwelling or the dwelling of the victim . . . ."

its effect or impact on him adversely affects a constitutionally protected right which he has. . . . [Finally], courts must, if possible, construe a law so that it is effective." (Citations omitted.) *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 569, 409 A.2d 1020 (1979); see also *Fleming* v. *Garnett*, 231 Conn. 77, 88, 646 A.2d 1308 (1994) (in interpreting statute, search is for effective and constitutional construction that reasonably accords with legislature's underlying intent); *Northeast Savings, F.A.* v. *Hintlian*, 241 Conn. 269, 273, 696 A.2d 315 (1997).

## II

The defendant initially claims that the statutory designation of a "victim" pursuant to the family violence statutes in § 46b-38a et seq. without procedural safeguards, violates his substantive due process rights under the state and federal constitutions because the protective order entered by the court precluded the defendant from access to his home and property, and subjected him to enhanced criminal liabilities and penalties.

"The Due Process Clause of the Fifth Amendment provides that 'No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .' [The United States Supreme] Court has held that the Due Process Clause protects individuals against two types of government action. So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin* v. *California*, 342 U.S. 165, 172 [72 S. Ct. 205, 96 L. Ed. 183] (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko* v. *Connecticut*, 302 U.S. 319, [325–26, 58 S. Ct. 149, 82 L. Ed. 288] (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still

be implemented in a fair manner. *Mathews* v. *Eldridge,* 424 U.S. 319, 335 [96 S. Ct. 893, 47 L. Ed. 2d 18] (1976). This requirement has traditionally been referred to as 'procedural' due process." *United States* v. *Salerno,* 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

The court must first determine if the defendant has a protected liberty interest. "In order to prevail on his due process claim, the [defendant] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process." (Internal quotation marks omitted.) *State* v. *Matos,* 240 Conn. 743, 749, 694 A.2d 775 (1997). The defendant has been deprived of his liberty to have access to his home and personal property. Additionally, the defendant is subject to criminal penalties for violation of the protective order. Thus, the defendant has been deprived of a liberty interest. The next question for the court, however, is whether the deprivation was without due process.

In a matter where the United States Supreme Court found pretrial detention to be regulatory and constitutional under a rational relation test, the court stated that in order "[t]o determine whether a restriction on liberty constitutes impermissible punishment or permissible regulation, we first look to legislative intent. . . . Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." (Citation omitted; internal quotation marks omitted.) *United States* v. *Salerno,* supra, 481 U.S. 747.

The statute which grants the Superior Court the authority to issue a protective order upon a charge of

family violence, § 46b-38c, was passed in 1986 as "An Act Concerning Family Violence Prevention and Response" (act) and is an attempt by the legislature to prevent family violence as a direct result of the efforts of Tracy Thurman, a Connecticut victim of domestic violence, and others seeking a way to prevent family violence. 29 H.R. Proc., Pt. 14, 1986 Sess., pp. 5251–73. It is clear from the legislative history of the act, that the restriction on the defendant's liberty is not punitive, but is meant to protect victims of family violence.

A similar statute in New York, N.Y. Crim. Proc. Law § 530.12 (McKinney 1999),[2] allows courts to enter criminal protection orders as a result of a charge of a crime of family violence ordering the exclusion of a person from his or her home and exposing the person to heightened criminal punishment for violation of the protective order. The statute has been deemed constitutional by three New York trial courts. See *People* v. *Koertge*, 182 Misc. 2d 183, 701 N.Y.S.2d 588 (1999); *People* v. *Forman*, 145 Misc. 2d 115, 546 N.Y.S.2d 755 (1989); *People* v. *Faieta*, 109 Misc. 2d 841, 440 N.Y.S.2d 1007 (1981). The New York courts noted that N.Y. Crim. Proc. Law

---

[2] N.Y. Crim. Proc. Law § 530.12 (McKinney 1999) provides in pertinent part: "1. When a criminal action is pending involving a complaint charging any crime or violation between spouses, parent and child, or between members of the same family or household . . . the court, in addition to any other powers conferred upon it by this chapter may issue a temporary order of protection as a condition of any order of recognizance or bail or an adjournment in contemplation of dismissal. In addition to any other conditions, such an order may require the defendant: (a) to stay away from the home, school, business or place of employment of the family or household member or of any designated witness . . . provided further, however, that failure to make such a determination shall not affect the validity of such temporary order of protection. In making such determination, the court shall consider, but shall not be limited to consideration of, whether the temporary order of protection is likely to achieve its purpose in the absence of such a condition, conduct subject to prior orders of protection, prior incidents of abuse, past or present injury, threats, drug or alcohol abuse, and access to weapons . . . ."

§ 530.12 (McKinney 1999) was intended to protect the victims of domestic violence and not to punish the defendant, and the state has a legitimate and significant interest in doing so. *People* v. *Koertge*, supra, 187; *People* v. *Forman*, supra, 125. The Connecticut legislature had a legitimate purpose in enacting § 46b-38a et seq. to ensure the safety of victims of family violence.

Under the rational basis test the defendant, therefore, "bears the heavy burden of proving that the challenged policy has no reasonable relationship" to the stated purpose of securing the safety of victims of family violence. (Internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 780. The defendant has failed to show that a court ordered protective order excluding one party involved in a family relation dispute from the family residence has no reasonable relationship to the purpose of deterring family violence.

The defendant argues that the designation of a "victim" creates a bias against the defendant in his formal criminal prosecution. None of the information gathered pursuant to § 46b-38a et seq., however, will be used for trial in the defendant's formal criminal prosecution. Contrary to his contention, the designation of a "victim" does not impair the presumption of innocence for the defendant. The trier of fact, with regard to the criminal charge of disorderly conduct, will not be informed of the protective order or any of the procedures or facts alleged that might have lead to a protective order, which the defendant or anyone else provided to the officer. The defendant's statements to the officer will not be admissible in the case-in-chief for the disorderly conduct charge pursuant to § 46b-38c (c), which provides that they shall be used solely to prepare reports, that the statements shall be confidential and that the reports will not be used for any other proceeding or court process. Furthermore, the burden of proof has not been

shifted in favor of the prosecution with regard to the criminal charges levied against the defendant.

Accordingly, the defendant, therefore, has failed to meet the burden of showing how § 46b-38c is not rationally related to the purpose of deterring family violence and the defendant's substantive due process rights have not been violated.

### III

Before addressing the procedural due process arguments of the defendant, the court will address his equal protection claims, as they require similar analysis to the substantive due process claim. The defendant claims that the creation of a class of victims and defendants under § 46b-38a et seq. denies him equal protection.

"[T]he concept of equal protection [under both the state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. . . . The equal protection clause does not require absolute equality or precisely equal advantages . . . . Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. . . . To determine whether a particular classification violates the guarantees of equal protection, this court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. . . . Where the classification impinges upon a fundamental right or impacts upon an inherently suspect group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. . . . On the other hand, where the classification at issue neither impinges upon

a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis." (Citations omitted; internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 760–61.

The defendant alleges that the statutory scheme creates a group of victims who are afforded greater rights than those of the defendant in the process of seeking a restraining order and the criminal prosecution. The statutes at issue do not affect the defendant's prosecution of any crime. Furthermore, the designation of a victim with regard to a protective order does not afford the victim greater rights with regard to the defendant's prosecution. Thus, the classification between a victim and a defendant does not impinge upon a fundamental right or impact upon an inherently suspect group. See generally id., 761. The defendant must show, therefore, that the statute bears no rational relation to some legitimate state purpose.

"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . ." (Citations omitted; internal quotation marks omitted.) Id., 762.

As stated previously, the purpose of the legislation, in which the state has a legitimate interest, is to protect victims of family violence. Section 46b-38a is designed to accomplish that purpose in a fair and reasonable

way. The classification of a victim and a defendant is not so attenuated from the goal of protecting victims of family violence as to render the distinction arbitrary or irrational. Thus, § 46b-38a et seq. does not violate the defendant's equal protection rights.

## IV

The next issue for the court to decide is whether the defendant's procedural due process rights have been violated. "[D]ue process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. . . . The [due process clause] in no way undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided. . . . Moreover, there is no violation of due process when a party in interest is given the opportunity of a meaningful time for a court hearing to litigate the question . . . ." (Citations omitted; internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Hintlian,* supra, 241 Conn. 273–74. "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. In short, within the limits of practicability . . . a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." (Citation omitted; internal quotation marks omitted.)

*Boddie* v. *Connecticut*, 401 U.S. 371, 378–79, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971).

"[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Internal quotation marks omitted.) *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 336, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999). "To determine the level of procedural due process necessary or whether a prior evidentiary hearing may be required we must examine three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used and the probable value, if any, of additional substitute procedural safeguards, and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *State* v. *Washburn*, 34 Conn. App. 557, 565, 642 A.2d 70, cert. denied, 230 Conn. 912, 645 A.2d 1017 (1994); see also *State* v. *Patterson*, 236 Conn. 561, 572, 674 A.2d 416 (1996).

The defendant complains that his due process rights were violated in the present case because he was: (1) denied the right to a hearing; (2) denied the right to an impartial tribunal; (3) denied a specific burden of proof when the court made its determination of the protective order; (4) denied the right not to incriminate himself; (5) denied the right to counsel; and, lastly, (6) denied the right to present a defense and confront the witnesses against him.

As stated previously, the defendant was deprived of access to his home, which is a valid privacy interest. Furthermore, the state's interest in protecting the victims of family violence is legitimate. Thus, the question

remains whether the procedure used limited the risk of an erroneous deprivation of the defendant's private interest, and if there were any additional substitute procedural safeguards.

## A

The defendant's first procedural due process claim is that he was denied the right to a hearing when he was barred from his home. Although Connecticut courts have not yet addressed the issue, the aforementioned New York trial courts have determined that an evidentiary hearing is unnecessary for the initial issuance of a protective order excluding a person from their home in connection with an arrest for a family violence crime. *People* v. *Koertge*, supra, 182 Misc. 2d 190; *People* v. *Forman*, supra, 145 Misc. 2d 128; *People* v. *Faieta*, supra, 109 Misc. 2d 847–48.

Both the Connecticut and New York provisions allowing for protective orders in relation to family violence offenses provide that the order shall be made a condition of the bail or release of the defendant. See General Statutes § 46b-38c (e); N.Y. Crim. Proc. Law § 530.12 (1) (McKinney 1999). In compliance with the statute, the protective order currently at issue was issued at the defendant's arraignment on the day after he received his summons. As noted by the court in *Forman*, "the need for expeditious assumption of judicial control following a defendant's arrest outweighs the need to minimize risk of error through adversary procedures. (*Gerstein* v. *Pugh*, 420 U.S. 103, [119–23, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)]; *Williams* v. *Ward*, 845 F.2d 374 [2d Cir. 1988]; cf., *Morrissey* v. *Brewer*, 408 U.S. 471, [484–87, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)].) . . . [T]he introduction of adversary procedures into the initial pretrial release determination

would add significant delay to the already existing back-log." *People* v. *Forman,* supra, 145 Misc. 2d 128–29.

Additionally, the defendant may at any time have the conditions of his release modified pursuant to General Statutes § 54-69. At that time, the defendant is entitled to have a full hearing. In fact, the defendant in the present case had a hearing on a motion to dissolve the protective order on a date only twelve days after the original protective order was issued. The defendant's due process rights, therefore, were not violated by the issuance of a protective order without an adversarial hearing.

## B

The defendant's next claim is that he was denied the right to an impartial tribunal. The defendant asserts that he was owed a fair trial before an impartial trier of fact. The issuance of a protective order is not in the nature of a trial, and the defendant has not presented any showing that the court was impartial. The defendant was not denied the right to an impartial tribunal.

## C

The defendant claims that the court failed to employ a burden of proof. The defendant claims that the court should have used the fair preponderance of the evidence standard of proof. The court was presented with the summons for disorderly conduct and the report from the officer. Thus, the court had sufficient information to find beyond a preponderance of the evidence that a protective order should be issued against the defendant.

## D

The defendant alleges that he was denied the right to not incriminate himself. As the defendant points out, article first, § 8, of the state constitution and the fifth

and fourteenth amendments of the United States constitution guarantee that the defendant need not be a witness against himself in a criminal prosecution. The defendant claims that he was made to incriminate himself or to be a source of evidence against himself when he met and spoke with the officer about his case because the information was used to generate a report given to the judge. The information in the report, however, was not used in the defendant's criminal case-in-chief, but only in determining whether to issue a protective order and for the recommendation of services pursuant to § 46b-38c (c). The defendant, therefore, was not made to be a witness against himself in violation of his constitutional rights.[3]

## E

The defendant claims that he was denied the right to counsel. The defendant came to court for his arraignment and asked the court for a continuance of the determination as to whether a protective order would issue in order for the defendant to procure counsel. The court denied the defendant's motion for a continuance. The defendant's right to counsel attaches at the time of arraignment. *Kirby* v. *Illinois*, 406 U.S. 682, 688–89, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); *Powell* v. *Alabama*, 287 U.S. 45, 57, 53 S. Ct. 55, 77 L. Ed. 158 (1932). Although the defendant did not have counsel at the time that the initial protective order was entered, the defendant procured counsel in a timely manner and a hearing was subsequently commenced with the defendant represented by counsel. The protective order was modified two weeks after the hearing, allowing the defendant to return to the marital home.

---

[3] The defendant also complains that the officer did not advise him of his *Miranda* rights and did not indicate that the defendant's participation was voluntary. The defendant's consultation was not in custody and not subject to police interrogation as required in *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Thus, the defendant was not entitled to have his *Miranda* rights read to him at that time.

The defendant asks this court to dismiss the information regarding the defendant's charge of disorderly conduct for this violation of his right to due process. "Dismissal of an information is a drastic action that is appropriate in cases where there [is] a need either to eliminate prejudice to a defendant in a criminal prosecution, where it was impossible to do so by imposition of lesser sanctions, or to deter a pattern of demonstrated and longstanding widespread or continuous official misconduct. *United States* v. *Broward*, 594 F.2d 345, 351 (2d Cir.), cert. denied, 442 U.S. 941, 99 S. Ct. 2882, 61 L. Ed. 2d 310 (1979); *United States* v. *Fields*, 592 F.2d 638, 647 (2d Cir. 1978), cert. denied, 442 U.S. 917, 99 S. Ct. 2838, 61 L. Ed. 2d 284 (1979). *State* v. *Bergin*, 214 Conn. 657, 672, 574 A.2d 164 (1990)." (Internal quotation marks omitted.) *State* v. *McMillan*, 51 Conn. App. 676, 686, 725 A.2d 342, cert. denied, 248 Conn. 911, 732 A.2d 179 (1999). The defendant has not been prejudiced by the imposition of the initial protective order without an attorney because he has had the order modified with the aid of counsel. Furthermore, there is no evidence of any pattern of long-standing, widespread or continuous official misconduct. Thus, the dismissal of the information would be too drastic a measure.

The defendant also seeks dismissal of the protective order. As stated previously, the order has been modified with the aid of counsel and, therefore, the order need not be dismissed, as the defendant is no longer prejudiced by the imposition of the order barring him from his home.

## F

The defendant claims that he was denied the right to present a defense and confront the witnesses against him. He alleges that at the hearing regarding the dissolution of the initial protective order conducted with counsel present for the defendant, the court improperly

denied the defendant the chance to inquire of the victim as to consultations with her attorney, thereby denying him the right to confront the witnesses against him.

"[A] criminal defendant's right to impeach the witnesses against him implicates his constitutional right to confrontation. . . . The confrontation clause gives the defendant the right to confront the witnesses against him. Cross-examination to elicit facts tending to show motive, interest, bias, prejudice and lack of veracity is a matter of right and may not be unduly restricted. . . . The right of confrontation, however, is not absolute and is subject to reasonable limitation. . . . [T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Not every evidentiary ruling that denies a defendant a line of inquiry to which he thinks he is entitled is constitutional error." (Citations omitted; internal quotation marks omitted.) *State* v. *Menzies*, 26 Conn. App. 674, 684–85, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992).

The hearing at issue was not a trial on the merits of the criminal charges against the defendant. It dealt with the revision of the terms of the defendant's release. At the hearing, the protective order was revised to require that the defendant refrain from imposing any restraint upon the person or liberty of his wife and from threatening, harassing, assaulting, molesting, or sexually assaulting his wife. The defendant was allowed access to return to his home. The condition of release simply held the defendant to additional criminal penalties if he engaged in behavior that would be criminal even without a protective order. The restriction of his cross-examination of his wife, therefore, did not prejudice him in the imposition of the restraining order that resulted from the hearing.

## V

The defendant's last argument is that he was denied rights guaranteed to him pursuant to § 46b-38c (c) because the officer testified at the hearing to revise the protective order. In actuality, the statute provides that the officer must prepare a written or oral report for the court. Section 46b-38c (c) specifically provides in pertinent part that a "local family violence intervention unit *shall* . . . prepare written or *oral* reports on each case for the court by the next court date to be presented at any time during the court session on that date . . . ." (Emphasis added.) Additionally § 46b-38c (d) provides in pertinent part that "[i]n all cases of family violence, a written or *oral* report and recommendation of the local intervention unit *shall* be available to a judge at the first court date appearance to be presented at any time during the court session on that date." (Emphasis added.) Thus, the testimony of the officer complied with § 46b-38c and the defendant's rights pursuant to the statute were not violated.

## VI

### CONCLUSION

The defendant's motion to dismiss is denied for the foregoing reasons.