Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS









Ex parte ROBERTO FLORES,


 Appellant.

§


§


§


§


§

No. 08-01-00213-CR


Appeal from the


County Court at Law No. Two


of El Paso County, Texas


(TC# 20010D01808)



O P I N I O N


 This is an appeal from the trial court's denial of Appellant's requested relief pursuant 


to a writ of habeas corpus. We affirm the trial court's order denying the requested relief. 

I. SUMMARY OF THE EVIDENCE


 Appellant filed his application for writ of habeas corpus on April 24, 2001. A hearing
on the writ was held on May 10, 2001. The evidence adduced at the writ of habeas corpus
hearing reveals that on March 23, 2001, Appellant was arrested for an offense involving
family violence. He was taken before Magistrate James T. Carter and Judge Carter issued
a Magistrate's Emergency Order for the Protection of the Family and/or Household pursuant
to Texas Code of Criminal Procedure Article 17.292. Appellant was prohibited from
committing acts of family violence regarding Martha Flores. Further, Appellant was
prohibited from communicating directly with any member of the protected parties in a
threatening or harassing manner, and he was prohibited from communicating any threats to
such parties. The order also prohibited Appellant from engaging in conduct that constituted
stalking regarding a member of the family or household. Lastly, Appellant was forbidden
from going within 200 yards of the family residence and the protected residents, the place
of employment located at 1359 Lomaland, and the schools of the two children except
incidental contact at LeBarron Elementary School where Appellant's daughter attended and
Appellant worked. 

 The order stated that a violation of the order by commission of an act prohibited by
the order may be punishable by a fine of up to $4,000 or by confinement in jail for a period
as long as one year or both. It further stated that an act that results in family violence or a
stalking offense may be prosecuted as a separate misdemeanor or felony offense. The order
stated that an act prosecuted as a separate felony offense, would be punishable by
confinement in prison for at least two years. The order was effective until the 23rd day of
May, 2001 - not to exceed sixty-one days. It was signed by both Judge Carter and Appellant.

 Judge Carter testified that Article 17.292 did not provide for a modification or
cancellation procedure. Further, no procedure for modification or cancellation was provided
in the statute. There is no provision for a hearing. Judge Carter stated that he did not
schedule a hearing when he issued this type of protective order, but he would entertain a
review, modification, or cancellation of the order. It was Judge Carter's opinion that he
could modify or cancel the Article 17.292 order within the sixty-one day period that the
protective order was allowed to be in effect. He testified that there was no provision in the
statute for one who is the subject of such an order to present evidence in opposition, but that
he had allowed such evidence on occasion. Judge Carter stated that he had allowed such
evidence in this case and had adjusted the order accordingly. 

 Judge Carter also testified that Article 17.292 requires that someone be under arrest
when such an order is issued, and that he always had either a probable cause affidavit or a
police report to review. He stated that he structured the order based upon the information
contained in the document before him and had done so in this case. 

 Appellant testified that he was an assistant principal and he worked at LeBarron
Elementary School. He stated that he had been living with his sister since the issuance of the
protective order. He had no need to go to the family residence. 

 Enrique Medina, an El Paso Police Officer, stated that on March 22, 2001, he arrested
Appellant after meeting with Martha Flores and preparing an arrest warrant. Medina stated
that Flores was distraught. Based on his observations of Flores, Medina arrested Appellant
and requested a protective order from Judge Carter. 



II. DISCUSSION


 In Issue No. One, Appellant asserts that the constitutionality or statutory validity of
Article 17.292 has not become moot due to the expiration of the protective order. (1) The mootness doctrine limits courts to deciding cases in which an actual controversy exists. In
re Salgado, 53 S.W.3d 752, 757 (Tex. App.--El Paso 2001, no pet.); Olson v. Commission
for Lawyer Discipline, 901 S.W.2d 520, 522 (Tex. App.--El Paso 1995, no writ). When there
has ceased to be a controversy between the litigating parties which is due to events occurring
after judgment has been rendered by the trial court, the decision of an appellate court would
be a mere academic exercise and the court may not decide the appeal. Salgado, 53 S.W.3d
at 757; Olson, 901 S.W.2d at 522. In most circumstances, the expiration of an order granting
injunctive or protective relief would render the issue moot. Salgado, 53 S.W.3d at 757. 
However, two exceptions to the mootness doctrine currently exist: (1) the "capable of
repetition yet evading review" exception and (2) the "collateral consequences" exception. 
Salgado, 53 S.W.3d at 757; Olson, 901 S.W.2d at 522. The first exception applies when the
challenged act is of such short duration that an Appellant cannot obtain review before the
issue becomes moot. Salgado, 53 S.W.3d at 757. The second exception has been applied
when Texas courts have perceived that prejudicial events have occurred "whose effects
continued to stigmatize helpless or hated individuals long after the unconstitutional judgment
had ceased to operate." Id. In such an instance, the effects are not absolved by mere
dismissal of the cause as moot. Id.

 In the present case, we find that the "capable of repetition yet evading review"
exception to the mootness doctrine applies. Certainly, a sixty-one day protective order which
has expired before an appellate opinion can be rendered is capable of repetition yet evading
review. See In the Matter of Cummings, 13 S.W.3d 472, 475 (Tex. App.--Corpus Christi
2000, no pet). Further, there is a stigma attached to the issuance of a protective order as well
as attendant legal consequences such as the fact that the Texas Family Code requires a court
to consider the commission of family violence in making child custody determinations. See
Tex. Fam. Code Ann. § 153.004 (Vernon 2002). Accordingly, we find that the "collateral
consequences" exception also applies. See Salgado, 53 S.W.3d at 757-58; Cummings, 13
S.W.3d at 475. Appellant's Issue No. One is overruled. 

 In Issue No. Two, Appellant contends that the right to a jury trial, entitlement to
counsel, compulsory process and confrontation of witness, the right to due course of law, and
the ability to petition for redress of grievances found in the Constitution of the State of Texas
are violated by Article 17.292 in that the statute does not provide for any of those rights. In
Issue No. Three, Appellant maintains that the Magistrate's Order for Emergency Protection
statute denies the statutory rights found in the Texas Code of Criminal Procedure such as the
right to jury, counsel, confrontation of witness, due process, freedom from unreasonable
seizure, jury trial, and a liberal construction of the code. 

 Initially, we must address the State's claim that Appellant has waived any contention
that the challenged statute is unconstitutional as applied to him. When a litigant asserts that
a statute is facially unconstitutional, he contends that the statute is unconstitutional in all its
applications. In contrast, under an "unconstitutional as applied" challenge, the moving party
generally concedes the constitutionality of the statute, but argues that it is being
unconstitutionally applied to his particular circumstances. See Tex. Boll Weevil Eradication
Found., Inc. v. Lewellen, 952 S.W.2d 454, 461 n.5 (Tex. 1997). One may raise a facial
challenge for the first time on appeal. However, in order to preserve an "as-applied"
challenge to the constitutionality of a statute, the defendant must have first raised the issue
in the trial court. See Garcia v. State, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994). The
State contends that Appellant did not raise the "as-applied" challenge before Judge Carter
and has waived the issue on appeal. While we have some reservations about requiring a
person probably not represented by counsel at a summary proceeding after arrest where the
taking of a record is unlikely to occur to lodge such an objection, we find it has no
implication in the present appeal. We take it from Appellant's pleadings and brief that he
is asserting a facial challenge to the statute in that he asserts that it is constitutionally infirm
in all its applications. 

 When reviewing the constitutionality of a statute, we are to presume the statute is
valid and the legislature has not acted unreasonably or arbitrarily in enacting it. Ex parte
Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). The burden rests on the party
challenging the statute to establish its unconstitutionality. Id. Further, we are to uphold the
statute if we can determine a reasonable construction which will render the statute
constitutional and carry out the legislative intent. Ely v. State, 582 S.W.2d 416, 419 (Tex.
Crim. App. 1979). A facial challenge is the most difficult because the challenger must
establish that no set of circumstances exists under which the statute would be valid. Briggs
v. State, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990). When challenging the
constitutionality of a statute, a defendant must first make a showing that the statute is
unconstitutional as applied to him; that it may be unconstitutional as to others is not
sufficient. Vuong v. State, 830 S.W.2d 929, 941 (Tex. Crim. App. 1992); Santikos v. State,
836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

 In essence, Appellant is contending that Article 17.292 fails to provide a right to a
hearing before the issuance of the emergency protective order. With the exception of
emergency situations, due process requires that when a governmental entity seeks to
terminate a protected interest, it must afford notice and opportunity for a hearing which is
appropriate to the nature of the case before the termination becomes effective. See Board
of Regents v. Roth, 408 U.S. 564, 570 n.7, 92 S.Ct. 2701, 2705 n.7, 33 L.Ed.2d 548 (1972). 
 No court in this state has determined the constitutionality of Article 17.292. However,
courts in other jurisdictions have ruled on the constitutionality of statutes similar to the one
under consideration in this case. In Sanders v. Shephard, 541 N.E.2d 1150, 1155 (Ill. App.
Dist. 1989), the Illinois appellate court held that an emergency protective order issued
pursuant to a domestic violence act met procedural due process requirements because
evidence of domestic violence constitutes a showing of exigent circumstances. In State v.
John Doe, 765 A.2d 518 (Conn. Super. 2000), the state authorities requested a protective
order for a spouse by means of the investigating officer compiling a report concerning an act
of domestic violence. The court held that the offending spouse's due process rights were not
violated by the issuance of a protective order without an adversarial hearing. The court
reasoned that the need for prompt assumption of judicial control following a family violence
arrest outweighed the need for adversary procedures and held that the protective order was
constitutionally entered. Id. at 527-28. In a similar situation, the New York District Court
upheld the issuance of protective orders without benefit of an adversarial hearing. See
People v. Koertge, 701 N.Y.S.2d 588, 593-96 (N.Y. Dist. Ct. 1998).

 Appellant points to various provisions of Tex. Fam. Code Ann. Title 4 (Vernon Supp.
2002) in support of his contentions. The provisions in Title 4 allow for protective orders up
to two years. They contain an extensive series of due process procedures in order to obtain
such orders. See id. A twenty-day ex parte order is available but it has a provision for a
motion to vacate which is lacking in Article 17.292. See Tex. Fam. Code Ann. § 83.004
(Vernon 2002). However, as decided in the other state authorities cited, it is the temporary
and emergency nature of emergency protective orders which allows them to pass
constitutional muster. (2)

 Further, while Article 17.292 does not provide for a cancellation or modification
procedure, the availability of the writ of habeas corpus procedure affords one the opportunity
to obtain an adversarial hearing to contest the emergency protective order. This ameliorates
the ex parte nature of the procedure. See Ex parte Shockley, 683 S.W.2d 493, 495 (Tex.
App.--Dallas 1984, pet. dism'd). We find that Article 17.292 is constitutional. Appellant's
Issues Nos. Two and Three are overruled. 


 Having overruled each of Appellant's issues on review, we affirm the trial court's
denial of Appellant's writ of habeas corpus.

July 25, 2003



 
 RICHARD BARAJAS, Chief Justice




Before Panel No. 4

Barajas, C.J., Larsen, and McClure, JJ.


(Publish)
1. Tex. Code Crim. Proc. Ann. art. 17.292 (Vernon Supp. 2003) entitled "Magistrate's Order for
Emergency Protection" provides:


 (a) At a defendant's appearance before a magistrate after arrest for an offense involving family
violence or an offense under Section 42.072, Penal Code, the magistrate may issue an order for
emergency protection on the magistrate's own motion or on the request of:
(1) the victim of the offense;
(2) the guardian of the victim;
(3) a peace officer; or
(4) the attorney representing the state.
(b) At a defendant's appearance before a magistrate after arrest for an offense involving family
violence, the magistrate shall issue an order for emergency protection if the arrest is for an offense
that also involves:
(1) serious bodily injury to the victim; or
(2) the use or exhibition of a deadly weapon during the commission of an assault.
(c) The magistrate in the order for emergency protection may prohibit the arrested party from:
(1) committing:
(A) family violence or an assault on the person protected under the order; or
(B) an act in furtherance of an offense under Section 42.072, Penal Code;
(2) communicating:
(A) directly with a member of the family or household or with the person protected under the order
in a threatening or harassing manner; or
(B) a threat through any person to a member of the family or household or to the person protected
under the order;
(3) going to or near:
(A) the residence, place of employment, or business of a member of the family or household or of
the person protected under the order; or
(B) the residence, child care facility, or school where a child protected under the order resides or
attends; or
(4) possessing a firearm, unless the person is a peace officer, as defined by Section 1.07, Penal
Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or
political subdivision.
(d) The victim of the offense need not be present in court when the order for emergency protection
is issued.
(e) In the order for emergency protection the magistrate shall specifically describe the prohibited
locations and the minimum distances, if any, that the party must maintain, unless the magistrate
determines for the safety of the person or persons protected by the order that specific descriptions
of the locations should be omitted.
(f) To the extent that a condition imposed by an order for emergency protection issued under this
article conflicts with an existing court order granting possession of or access to a child, the
condition imposed under this article prevails for the duration of the order for emergency protection.
(g) An order for emergency protection issued under this article must contain the following
statements printed in bold-face type or in capital letters:
"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE
ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY
CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY BOTH. AN ACT THAT
RESULTS IN FAMILY VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED
AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED
AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON
FOR AT LEAST TWO YEARS. THE POSSESSION OF A FIREARM BY A PERSON, OTHER
THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY
ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE
AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE
PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.
"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY
GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS
ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF
THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER."
(h) The magistrate issuing an order for emergency protection under this article shall send a copy of
the order to the chief of police in the municipality where the member of the family or household or
individual protected by the order resides, if the person resides in a municipality, or to the sheriff of
the county where the person resides, if the person does not reside in a municipality. If the victim of
the offense is not present when the order is issued, the magistrate issuing the order shall order an
appropriate peace officer to make a good faith effort to notify, within 24 hours, the victim that the
order has been issued by calling the victim's residence and place of employment. The clerk of the
court shall send a copy of the order to the victim.
(i) If an order for emergency protection issued under this article prohibits a person from going to
or near a child care facility or school, the magistrate shall send a copy of the order to the child care
facility or school.
(j) An order for emergency protection issued under this article is effective on issuance, and the
defendant shall be served a copy of the order in open court. An order for emergency protection
issued under this article remains in effect up to the 61st day but not less than 31 days after the date
of issuance.
(k) To ensure that an officer responding to a call is aware of the existence and terms of an order for
emergency protection issued under this article, each municipal police department and sheriff shall
establish a procedure within the department or office to provide adequate information or access to
information for peace officers of the names of persons protected by an order for emergency
protection issued under this article and of persons to whom the order is directed. The police
department or sheriff may enter an order for emergency protection issued under this article in the
department's or office's record of outstanding warrants as notice that the order has been issued and
is in effect.
(l) In the order for emergency protection, the magistrate may suspend a license to carry a
concealed handgun issued under Section 411.177, Government Code, that is held by the defendant.
(m) In this article:
(1) "Family," "family violence," and "household" have the meanings assigned by Chapter 71,
Family Code.
(2) "Firearm" has the meaning assigned by Chapter 46, Penal Code.
2. Appellant also analogizes to the bail provisions in the Code of Criminal Procedure where he asserts
greater due process procedure are provided. However, these provisions do not contemplate the emergency situation
provided for in Article 17.292.