OPINION OF THE COURT
Eli Mellan, J.
This matter originated by virtue of an order to show cause, which directed that a hearing be held as to whether a temporary order of protection heretofore entered herein should be vacated or modified. The hearing was held without opposition of the District Attorney on June 24, 1981.
An accusatory instrument was filed in this court on June 4, 1981, wherein a District Court information subscribed and sworn to on June 3, 1981, alleged that the defendant violated subdivision 1 of section 120.00 of the Penal Law, assault, third degree, by having chased the complainant, defendant’s wife, in the back yard of their home, throwing her to the ground and causing a cut on her knee and a “broken right foot”. By way of background it appeared that a prior complaint by the same complainant resulted in a District Court information subscribed and sworn to on October 20, 1980, alleging assault, third degree, which culminated in an adjournment in contemplation of dis *842 missal under CPL 170.55, granted on January 28,1981 for a period of six months.
When the defendant appeared before the court in arraignment on the current charges, the defendant was, of course, personally present but without an attorney at the time; the court, apparently on the basis of the background and on application of the Assistant District Attorney, granted a temporary order of protection on June 11, 1981, requiring the defendant to stay away from the home, school, business or place of employment of Concetta Faieta, the complainant herein, in addition to other directions from the court. The net result of this temporary order of protection was that the defendant, who is indicated to be a victim of multiple sclerosis, had to remove himself from his own home which he had owned for many years and which, in fact, he had shared with his prior wife who died from multiple sclerosis. It appears that the said home has been equipped with handrails both in the hallways and in the bathroom facilities, to accommodate a victim of multiple sclerosis. Yet, on the basis of this order, the defendant had to remove himself from the premises.
The order to show cause secured by defendant’s attorney on June 18, 1981, seeks to have the temporary order of protection vacated or modified on the grounds that the provisions of CPL 530.12, pursuant to which the temporary order of protection was issued, is unconstitutional, that the defendant was not represented at the time of the issuance of the order, that the defendant was not afforded an opportunity to be heard prior to the issuance of the order, that there is a lack of due process in the issuance of such an order inasmuch as the statute does not provide for a hearing prior to the issuance thereof.
As stated above, the order to show cause itself provided that a hearing should be held on the afore-mentioned issues. Such a hearing was directed on the ex parte application of the defendant, without the Assistant District Attorney being afforded an opportunity to either agree to or oppose such a hearing. Nevertheless, on the scheduled date of the hearing the Assistant District Attorney indicated a willingness to proceed and participate in such a hearing without any opposition thereto.
*843 Thus, the hearing was conducted on June 24, 1981, wherein the complainant, Concetta Faieta, testified that she works part time as a piano teacher, has a limited income, that she began to know and reside with the defendant some time during May of 1980, and that they were married during July, 1980. The defendant prior thereto was the sole owner of the premises, having previously resided therein with his former wife, who died approximately two years earlier. After the marriage of the complainant and the defendant on July 9, 1980, there were repeated disputes and arguments between the two parties. The complainant’s version establishes that there are repeated spells of arguing and fighting. She, herself, admitted and related in her own version of the facts that on the date of the most recent occurrence, she had grabbed his cane, on which the defendant is dependent for balance and ambulation, and that she threw it around in various places, banging it to such an extent that she broke the cane. The defendant stated that the cane had a plastic handle which the complainant broke, requiring him to go to the drug store immediately after the occurrence to buy himself another cane. He also stated that the complainant was so violent that she appeared to be threatening to utilize it to crash certain mirrors within the premises of their home and a glass table; that he attempted to prevent her from doing so by grabbing the broken cane and taking it away from her. He denies having struck her or causing her any of the injuries which she sustained, claiming not only that she inflicted the injuries on herself but, also, that even after the complaint was filed against him he was the one who took her to the doctor, nursed her and ministered to her inflicted injuries; that he prepared the meals for the household. In fact, for the period of time from June 3, when the complainant claims the injuries were inflicted upon her, to June 11, the date that he appeared for arraignment when the temporary order of protection was issued, both parties continued to share one bedroom, slept together and even on one occasion had sex. This testimony, incidentally, remained uncontradicted and undisputed during the hearing.
*844 While the defendant does not appear to have financial difficulty in complying with the temporary order of protection, it is obvious that the requirement that he stay out of his home imposes upon the defendant, to say the very least, a tremendous amount of inconvenience by virtue of the fact that the specified special facilities constructed in his home, pursuant to his physical incapacity, are not available to him in the form of the handrails, etc.
As an interesting aside which was revealed during the course of the testimony, the defendant stated that approximately a month earlier he had transferred title to his house in such a manner that both the complainant and the defendant are now co-owners of the residence. Furthermore, his total life’s savings at the time were approximately $40,000, consisting of time certificates, of which he took 50%, or approximately $20,000, and transferred it to the complainant, wife of the defendant. When the court, out of curiosity, inquired as to why he would do such a thing when there had been such turbulence and difficulties in their short marriage, his answer was that he did it for the purpose of hoping to improve the circumstances of the marriage and to encourage a better relationship between them, to buy peace so to speak, stating that there have been such “periods of ecstacy” during the time of their marriage that the ecstacies exceeded the miseries or agonies.
The defendant also related that during this brief period of marriage the complainant has left him approximately 16 times and that on at least one of these occasions the complainant went to the household of her former, divorced spouse and stayed in his residence for a period of six weeks, and that on other occasions she stayed in the home of her daughter.
The complainant also testified on her own that she is currently looking for an apartment and intends to move out of the residence.
Thus, the court can appreciate the concern of his colleague who issued the temporary order of protection based upon the allegations herein which, of course, remain to be proved during the course of the trial, which to avoid the *845 risk of physical abuses heaped upon either of the parties, certainly appeared to be appropriate at the time. Under the circumstances, however, the court is of the opinion that notwithstanding the possible need for an order of protection, there is an injustice resulting from these circumstances where the defendant, in his condition, has to remove from his own premises, his residence and home which he has owned for so long, especially since where the complainant has other possible means of arranging for her own abode and complying with the terms of an order of protection without unseating and removing the defendant from his own dwelling. It is therefore, the court’s opinion that the temporary order of protection, while being permitted to remain in existence, should be modified to the extent that the defendant shall be directed to stay away from the home or residence or business or place of employment, should there be one, of the complainant, Concetta Faieta, so long as such home, residence, business or place of employment of the said complainant be located somewhere other than at 104 Tilrose Avenue, Málveme, New York, the premises owned by the defendant; that the defendant be permitted to re-enter his own residence without interference.
The defendant has indicated, without dispute, that the complainant does not hesitate to communicate with and contact the defendant, even currently, and that they would lunch together or meet together without any incident. The defendant is hereby directed not to initiate any such meetings and that such meetings, if at all they take place, should be at the initiative of the complainant.
In view of the foregoing findings, the court finds it necessary and appropriate to address the legal issues raised by the order to show cause concerning the constitutionality of CPL 530.12 and the legality of the temporary order of protection issued thereunder.
The defendant argues that the order of protection was illegal because it was granted on an ex parte basis, “notwithstanding that defendant was ready, willing and able to give his version of the incident”. Defendant also argues that a hearing should be afforded before the issuance of such an order and that the Criminal Procedure Law is unconstitutional with regard to these provisions for the *846 issuance of orders of protection. To bolster his argument, he points out that the Criminal Procedure Law varies from the provisions of the Family Court Act wherein a hearing is held as soon as practicable after the filing of an offense and provides that only 24-hours notice need be given regarding the service of a summons upon the respondent prior to the hearing and that the hearing cannot be held sooner than three days after the service. Thus, the defendant argues that the Family Court Act provides for a hearing, whereas the Criminal Procedure Law does not provide for a hearing in the issuance of orders of protection, resulting in a lack of due process.
In this instance, of course, the arguments are entirely moot inasmuch as an ex parte order is one that is issued without any notice to the defendant, where in this case the defendant was personally present at the time that the temporary order of protection was directed. Furthermore, as to the hearing, while there is no specific provision within the Criminal Procedure Law for the holding of a hearing prior to the issuance of the order of protection, the defendant herein has been afforded a hearing, which only demonstrates that there are many situations within the Criminal Procedure Law where hearings are afforded notwithstanding the lack of specific statutory directions that hearings shall be conducted, e.g.: Sandoval, Wade, Huntley and the variety of suppression hearings which culminate from decisional requirements and not necessarily statutory requirements.
CPL 530.12 (subd 3) provides that the court may issue a temporary order of protection ex parte upon the filing of an accusatory instrument and for good cause shown. The contention is that even though the statute so provides, it is unconstitutional.
When CPL 530.12 was enacted it was entitled, “Protection for victims of family offenses”, and provided that a temporary order of protection may be issued as a condition of pretrial release on bail, or an adjournment in contemplation of dismissal.
Being considered as part of the bail fixing procedures, and the purpose of bail need not be developed or expounded *847 upon at this point, certainly a court may detain a defendant unless a specified amount of bail be posted and conditions may be imposed upon the defendant’s pretrial release. It is, therefore, conceivable and totally reasonable that a statute would require the terms and conditions of an order of protection as a condition of pretrial release.
As to the argument that CPL 530.12 is unconstitutional, there is of course a presumption of constitutionality both under the statute and the cases (see McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 92, 150; also Matter of Cullum v O’Mara, 43 AD2d 140; Wasmuth v Allen, 14 NY2d 391; Defiance Milk Prods. Co. v Du Mond, 309 NY 537).
If there is any reasonable basis for sustaining the constitutionality of the statute, the dictates of the law are that the statute must be sustained and not declared to be unconstitutional (Nettleton Co. v Diamond, 27 NY2d 182; Lighthouse Shores v Town of Islip, 41 NY2d 7).
In considering the court’s authority to declare laws unconstitutional, the standards to be followed by a court of original jurisdiction are outlined in section 150 of Book 1 of McKinney’s Consolidated Laws of New York (Statutes) stated as follows: “A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where the invalidity of the act is apparent on its face * * * However, where the consequences may be severe and the damage irreparable, the lower court should not hesitate to determine the constitutionality of a statute.”
Thus, while this court does possess the power to declare a statute unconstitutional, it cannot do so unless the finding of the court is inescapable and obvious and, further, that the failure to hold the statute to be unconstitutional must result in very serious harm. The enactment of CPL 530.12 empowered this court, in criminal proceedings, to issue a temporary order of protection as a condition of pretrial release, or as a condition of release on bail and also, *848 further, as a condition of an adjournment in contemplation of dismissal. The temporary order of protection may be issued in criminal actions involving charges of disorderly conduct, harassment, menacing, reckless endangerment, assault or attempted assaults between spouses, parent and child or between members of the same family or household. Inasmuch as the temporary order of protection is issued as a condition of bail or pretrial release, to require the holding of a hearing before any such issuance would be onerous, impractical and in most instances inappropriate. While hearings can be held on issues concerning excessive bail, generally, bail is fixed without such a hearing. Therefore, the failure of the statute to provide for a hearing prior to the issuance of the temporary order of protection does not, in this court’s opinion, result in a lack of due process or affect the constitutionality aspects of the law.
The fact of the matter is that a hearing can be sought in connection with the issuance of a temporary order of protection, as witness the fact that in this very case such a hearing was conducted.
It is well settled that due process is violated unless an opportunity to be heard is afforded at a meaningful time and in a meaningful manner. (Matter of Jones v Berman, 37 NY2d 42.) Under the present judicial system a defendant who is the object of a temporary order of protection may at any time request a hearing for the purpose of determining the merits of such an order, notwithstanding that such a procedure is not specifically provided for in the Criminal Procedure Law. Such a hearing may be requested by order to show cause or by motion. While the denial of such a motion may, under certain circumstances, constitute a denial of due process, the existence of this inherent judicial procedure for a hearing sufficiently protects a defendant’s right to due process.
The court thus finds that this statute is not constitutionally defective and, accordingly, denies that branch of defendant’s motion which seeks an order declaring the provisions of CPL 530.12 unconstitutional. However, because of the circumstances, which were determined during the course of the hearing, the court has granted the defendant’s motion to the extent of modifying the temporary *849 order of protection and has thus issued an amended temporary order of protection retaining all terms and conditions thereof, except that the defendant may have access to his own home and residence and is directed to comply with the other terms and conditions of the order of protection as set forth therein and as heretofore issued consistent with this decision.