[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The defendant, Marc Swanson, challenges the constitutionality of the laws and procedures used in Connecticut courts which proscribe issuing protective orders that result in barring a person from their home as a result of an arrest for a family violence crime.
The defendant was issued a summons by officers from the Norwalk Police Department on July 20, 1999, for disorderly conduct, a violation of General Statutes § 53a-182, while he was at the residence he shares with his wife. The defendant appeared before the Court on July 21, 1999, at which time the state requested the Court to issue a protective order for the benefit of the defendantJudicial District wife. The defendant requested a continuance in order to procure counsel. The Court referred the defendant to a family violence response and intervention officer (officer) for the preparation of the initial report pursuant to General Statutes § 46b-38c. According to the defendantJudicial District brief, the victimJudicial District advocate advised the officer that a protective order would issue. The officer spoke with the defendant in person and with the wife by phone. The officer compiled a report indicating the wife Judicial District allegations and the defendant Judicial District denial of the charges. The officer supplied the Court with the report, and the Court issued a protective order pursuant to § 46b-38c[1]. The Court ordered that the defendant refrain from imposing any restraint upon the person or liberty of his wife; from threatening, harassing, assaulting, molesting, or sexually assaulting his wife; and from entering the family dwelling occupied by his wife.
On August 2, 1999, a hearing was conducted before this Court at which the defendant was represented by counsel. The family response and intervention officer testified along with other witnesses. The Court modified the order by permitting the defendant to return to his residence, but continued the remaining provisions of the previous restraining order.
The defendant claims that the statutes and procedures used for the CT Page 5085-gv issuance of the protective order are unconstitutional because they have denied the defendant rights secured to him under Article I, §§ 7, 8, 9 and 10 of the state constitution and the fifth andfourteenth
amendments to the United States constitution. The defendant asks the court to dismiss the information against the defendant pursuant to General Statute § 54-56 and Practice Book §§ 41-8(8) and 41-8 (9) and to dismiss the protective order.
The defendant alleges that his constitutional rights to substantive and procedural due process and equal protection have been violated. The defendant also claims that his rights pursuant to General Statutes §46b-38c have been violated. The Court will address the constitutional claims first.
The review of the defendant Judicial District constitutional claims is "guided by the well established principle that a presumption of constitutionality . . . attaches to a statutory enactment and the burden . . . rest upon a party asserting its invalidity to establish not only that it is unconstitutional beyond a reasonable doubt but that its effect or impact on him adversely affects a constitutionally protected right which he has. . . . [Finally], courts must, if possible, construe a law so that it is effective . . . Society for Savings v. ChestnutEstates, Inc., 176 Conn. 563, 569, 409 A.2d 1020 (1979); see alsoFleming v. Garnett, 231 Conn. 77, 88, 646 A.2d 1308 (1994) (in interpreting statute, we will search for effective and constitutional construction that reasonably accords with legislatureJudicial District underlying intent)." (Internal quotation marks omitted.) NortheastSavings v. Hintlian, 241 Conn. 269, 273, 696 A.2d 315 (1997).
 I
The defendant initially claims that the statutory designation of a "victim" pursuant to the family violence statutes in General Statutes § 46b-38a et seq. without procedural safeguards violates his substantive due process under the state and federal constitutions because the protective order entered precluded the defendant from access to his home and property and subjected him to enhanced criminal liabilities and penalties.
"The Due Process Clause of the Fifth Amendment provides that `no person shall . . . be deprived of life, liberty, or property, without due process of law. . . .' [The United States Supreme Court] has held that the Due Process Clause protects individuals against two types of government action. So-called `substantive due process' prevents the CT Page 5085-gw government from engaging in conduct that `shocks the conscience.' Rochinv. California, 342 U.S. 165, 172, [72 S.Ct. 205, 96 L.Ed. 183] (1952), or interferes with rights `implicit in the concept of ordered liberty,'Palko v. Connecticut, 302 U.S. 319, 325-26, [58 S.Ct. 149, 82 L.Ed. 288] (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. Mathews v. Eldridge, 424 U.S. 319, 335, [96 S.Ct. 893, 47 L.Ed.2d 18] (1976). This requirement has traditionally been referred to a `procedural' due process." United States v. Salerno,481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
The Court must first determine if the defendant has a protected liberty interest. "In order to prevail on his due process claim the [defendant] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process."State v. Matos, 240 Conn. 742,780, 694 A.2d 775 (1997). The defendant has been deprived of his liberty to have access to his home and personal property. Additionally the defendant is subject to criminal penalties for violation of the protective order. Thus the defendant has been deprived of a liberty interest, however the next question for the Court is whether the deprivation was without due process.
In a matter where the United States Supreme Court found pretrial detention to be regulatory and constitutional under a rational relation test, the Court stated that in order "[t]o determine whether a restriction on liberty constitutes impermissible punishment or permissible regulation, we first look to legislative intent. . . . Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." United States v. Salerno, supra, 481 U.S. 747.
The statute which grants the Superior Court with authority to issue a protective order upon a charge of family violence, General Statutes § 46b-38c, was passed in 1986 as an Act Concerning Family Violence Prevention and Response and is an attempt by the legislature to prevent family violence as a direct result of the efforts of Tracy Thurman, a Connecticut victim of domestic violence, and others seeking a way to prevent family violence. 29 H.R. Proc., Pt. 14, 1986 Sess., pp. CT Page 5085-gx 5251-5273. It is clear from the legislative history of the Family Violence Prevention and Response Act that the restriction on the defendant's liberty is not punitive, but is meant to protect victims of family violence.
A similar statute in New York, N.Y.Crim.Pro. § 520.12 (McKinney 1999)[2]. allows courts to enter criminal protection orders as a result of a charge of a crime of family violence ordering the exclusion of a person from his or her home and exposing the person to heightened criminal punishment for violation of the protective order. The statute has been deemed constitutional by three New York trial courts. See NewYork v. Koertge, 1999 WL 1101302 (N.Y.Dist.Ct. 1999); New York v. Forman,546 N.Y.S.2d 755 (N.Y.City Crim.Ct. 1989); New York v. Faieta,440 N.Y.S.2d 1007 (N.Y.Dist.Ct. 1981). The New York courts noted that N.Y.Crim.Pro. § 530.12 (McKinney 1999) was intended to protect the victims of domestic violence and not to punish the defendant and the state has a legitimate and significant interest in doing so. People v.Koertge, supra, 1999 WL 1101302; People v. Forman, supra, 546 N.Y.S.2d 762- 63. The Connecticut legislature had a legitimate purpose in enacting General Statutes § 46b-38a et seq. to ensure the safety of victims of family violence.
Under the rational basis test the defendant, therefore, "bears the heavy burden of proving that the challenged policy has no reasonable relationship" to the stated purpose of securing the safety of victims of family violence. State v. Matos, supra, 240 Conn. 780. The defendant has failed to show that a court ordered protective order excluding one party involved in a family relation dispute from the family residence has no reasonable relationship to the purpose of deterring family violence.
The defendant argues that the designation of a "victim" creates a bias against the defendant. in his formal criminal prosecution. However none of the information gathered pursuant to § 46b-38a et seq. will be used for trial in the defendant's formal criminal prosecution. Contrary to the defendant's contention, the designation of a "victim" does not impair the presumption of innocence for the defendant. The trier of fact, with regard to the criminal charge of disorderly conduct, will not be informed of the protective order or any of the procedures or facts alleged that might have lead to a protective order, which he or any one else provided to the family violence response and intervention officer. The defendant's statements to the family violence response and intervention officer will not be admissible in the case in chief for the disorderly conduct charge pursuant to General Statutes § 46b-38c (c) which provides that they shall be used solely to prepare reports, that CT Page 5085-gy the statements shall be confidential and that the reports will not be used for any other proceeding or court process. Furthermore, the burden of proof has not been shifted in favor of the prosecution with regard to the criminal charges levied against the defendant.
Accordingly, the defendant therefore has failed to meet the burden of showing how General Statutes § 46b-38c is not rationally related to the purpose of deterring family violence and the defendant's substantive due process rights have not been violated.
 II
Before addressing the procedural due process arguments of the defendant, the Court will address the equal protection claims of the defendant as they require similar analysis to the substantive due process claim. The defendant claims that the creation of a class of victims and defendants under General Statutes § 46b-38a et seq. denies the defendant equal protection of law.
"The concept of equal protection [under both the state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. . . . The equal protection clause does not require absolute equality or precisely equal advantages. . . . Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. . . . To determine whether a particular classification violates the guarantees of equal protection, this court must consider the character of the classification; the individual, interests affected by the classification; and the governmental interests asserted in support of the classification. . . . Where the classification impinges upon a fundamental right or impacts upon an inherently suspect group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. . . . On the other hand, where the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis." (Citations omitted; internal quotation marks omitted.) State v. Matos, 240 Conn. 743, 760-61,694 A.2d 775 (1997).
The defendant alleges that the statutory scheme creates a group of victims who are afforded greater rights than those of the defendant in the process of seeking a restraining order and the criminal prosecution. CT Page 5085-gz The statutes at issue do not affect the defendant's prosecution of any crime. Furthermore, the designation of a victim with regard to a protective order does not afford the victim greater rights with regard to the defendant's prosecution. Thus, the classification between a victim and a defendant does not impinge upon a fundamental right or impact upon an inherently suspect group. See generally State v. Matos, supra, 240 Conn. 761. Therefore, the defendant must show that the statute bears no rational relation to some legitimate state purpose.
"Under the rational basis test, the court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decision maker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." (Citations omitted; internal quotation marks omitted.) State v. Matos, supra, 240 Conn. 762.
As stated previously, the purpose of the legislation is to protect victims of family violence to which the state has a legitimate interest. General Statutes § 46b-38a is designed to accomplish that purpose in a fair and reasonable way. The classification of a victim and a defendant is not so attenuated from the goal of protecting victims of family violence as to render the distinction arbitrary or irrational. Thus, General Statutes § 46b-38a et seq. does not violate the defendant's equal protection rights.
 III
The next issue for the Court to decide is whether the defendant's procedural due process rights have been violated. "[D]ue process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. . . . The [due process clause] in no way. undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided. . . . Moreover, there is no violation of due process when a party in interest is given the opportunity of a meaningful time for a court hearing to. litigate the question." (Citations omitted; internal quotation marks omitted.) CT Page 5085-haNortheast Savings v. Hintlian, 241. Conn. 269, 273-74, 696 A.2d 315
(1997). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. . . . In short, within the limits of practicability, . . a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." (Citations omitted; internal quotation marks omitted.) Boddie v.Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
"[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." Kostrzewski v. Comm. Of Motor Vehicles,52 Conn. App. 326, 336, 727 A.2d 233, cert. denied 249 Conn. 910,733 A.2d 227 (1999). "To determine the level of procedural due process necessary or whether a prior evidentiary hearing may be required we must examine three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used and the probable value, if any, of additional substitute procedural safeguards, and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." State v. Washburn, 34 Conn. App. 557, 565,642 A.2d 70, cert. denied, 230 Conn. 912, 645 A.2d 1017 (1994); See also,State v. Patterson, 236 Conn. 561, 572, 674 A.2d 416 (1996).
The defendant complains that his due process rights were violated in this case because he was: (1) denied a right to a hearing; (2) denied a right to an impartial tribunal; (3) denied a specific burden of proof when the court made its determination of the protective order; (4) denied the right not to incriminate himself; (5) denied the right to counsel; (6) and, lastly, denied the right to present a defense and confront the witnesses against him.
As stated previously, the defendant was deprived of access to his home; which is a valid privacy interest. Furthermore, the state's interest in protecting the victims of family violence is legitimate. Thus the question remains whether the procedure used limited the risk of CT Page 5085-hb an erroneous deprivation of the defendant's private interest, and if there were any additional substitute procedural safeguards.
 A
The defendant's first procedural due process claim is that he was denied a right to a hearing when he was barred from his home. Although Connecticut courts have not yet addressed the issue, the previously mentioned New York trial courts have determined that an evidentiary hearing is unnecessary for the initial issuance of a protective order excluding a person from their home in connection with an arrest for a family violence crime. People v. Koertge, 1999 WL 1101302, (N.Y.Dist.Ct.); People v. Forman, supra, 546 N.Y.S.2d 764-66; People v.Faieta, supra, 440 N.Y.S.2d 1011.
Both the Connecticut and New York provisions allowing for protective orders in relation to family violence offenses provide that the order shall be made a condition of the bail or release of the defendant. See General Statutes § 46b-38c (e) and N.Y.Crim.Proc. § 530.12(1) (McKinney 1999). In compliance with the statute, the protective order currently at issue was issued at the defendant's arraignment on the day after he received his summons. As noted by the court in Forman, "the need for expeditious assumption of judicial control following a defendant's arrest outweighs the need to minimize risk of error through adversary proceedings. Gerstein v. Pugh, 420 U.S. 103, 119-123,95 S.Ct. 854,865-868, 43 L.Ed.2d 54 (1975); Williams v. Ward, 845 F.2d 374 (2d Cir. 1988). . . . The introduction of adversary procedures into the initial pretrial release determination would add significant delay to the already existing backlog." People v. Forman, supra, 546 N.Y.S.2d 765.
Additionally, the defendant may at any time have the conditions of his release modified pursuant to General Statutes § 54-69. At that time the defendant is enabled to have a full hearing. In fact, the defendant in this case had a hearing on a motion to dissolve the protective order on August 2, 1999, only 12 days after the original protective order. Therefore, the defendant's due process rights were not violated by the issuance of a protective order without an adversarial hearing.
 B
The defendant's next claim is that he was denied the right to an impartial tribunal. The defendant asserts that he was owed a fair trial before an impartial trier of fact. The issuance of a protective order is not in the nature of a trial, and the defendant has not presented any CT Page 5085-hc showing that the court was impartial. The defendant was not denied the right to an impartial tribunal.
 C
The defendant claims that the Court failed to employ a burden of proof. The defendant claims that the court should have used a standard of proof by the fair preponderance of the evidence. The court was presented with the summons for disorderly conduct and the report from the family violence response and intervention officer. Thus, the court had sufficient information to find beyond a preponderance of the evidence that a protective order should be issued against the defendant.
 D
The defendant alleges that he was denied the right to not incriminate himself. As the defendant points out, article I, § 8 of the state constitution and the fifth and fourteenth amendments of the United States constitution guarantees that the defendant need not be a witness against himself in a criminal prosecution. The defendant claims that he was made to incriminate himself or be a source of evidence against himself when he met and spoke with the family violence response and intervention officer about his case because the information was used to generate a report given to the judge. The information in the report, however, was not used in the defendant's criminal case in chief, but only in determining whether to issue a protective order and for recommendation of services pursuant to General Statutes § 46b-38c
(c). Therefore, the defendant was not made to be a witness against himself in violation of his constitutional rights.[3]
 E
The defendant claims that he was denied the right to counsel. The defendant came to court for his arraignment and asked the court for a continuance of the determination as to whether a protective order would issue in order for the defendant to procure counsel. The court denied the defendant's motion for a continuance. The defendant's right to counsel attaches at the time of arraignment. Kirby v. Illinois,406 U.S. 682, 688-89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Powell v.Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Although the defendant did not have counsel at the time that the initial protective order was entered, the defendant procured counsel in a timely manner and a hearing was commenced with the defendant represented by counsel on August 2, 1999. The protective order was modified on August 16, 1999 CT Page 5085-hd allowing the defendant to return to the marital home.
 IV
The defendant's last argument is that he was denied rights guaranteed to him pursuant to General Statutes § 46b-38c (c) because the family violence response and intervention officer testified at the hearing to revise the protective order. In actuality, the statute provides that the family violence response and intervention officer must prepare a written or oral report for the court. Section 46b-38c (c) specifically provides in pertinent part that a "local family violence intervention unit shall
. . . prepare written or oral reports on each case for the court by the next court date to be presented at any time during the court session on that date." (Emphasis added.) Additionally General Statutes § 46b-38c (d) provides in pertinent part that "[i]n all cases of family violence, a written or oral report and recommendation of the local intervention unit shall
be available to a judge at the first court date appearance to be presented at any time during the court session on that date." (Emphasis added.) Thus, the testimony of the family violence response and intervention officer complied with General Statutes § 46b-38c
and the defendant's rights pursuant to the statute were not violated.
The defendants motion to dismiss is denied for the foregoing reasons. CT Page 5085-hf
RODRIGUEZ, J.